FILED

08/22/2025

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 19, 2025

**STATE OF TENNESSEE v. ANTWON WILLIAM SANTOS**

**Appeal from the Criminal Court for Knox County**
**No. 118750   Hector Sanchez, Judge**

_____

**No. E2024-01773-CCA-R3-CD**

_____

Antwon William Santos, Defendant, claims that the trial court erred in finding that he violated the terms of his probation and in ordering him to serve the balance of the sentence in confinement.  After a thorough review of the record and applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JOHN W. CAMPBELL, SR., and MATTHEW J. WILSON, JJ., joined.

Mitchell T. Harper, Knoxville, Tennessee, for the appellant, Antwon William Santos.

Jonathan Skrmetti, Attorney General and Reporter; Raymond J. Lepone, Assistant Attorney General; Charme P. Allen, District Attorney General; and Sean Roberts, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

        In March 2021, the Knox County Grand Jury indicted Defendant on one count each of aggravated assault, solicitation of fabricating evidence, domestic assault, and coercion of a witness.  Defendant pleaded guilty to aggravated assault as part of a plea deal, receiving a six-year sentence to be served on supervised probation with all other charges dismissed. His probation included special conditions such as no contact with the victim and compliance with all laws.  In October 2024, a probation violation warrant was issued after Defendant accumulated new charges of identity theft, fraudulent use of a credit card, shoplifting, and a "computer offense."

*Probation Revocation Hearing*

Angelica Gonzalez testified that on September 6, 2024, she left her purse in a shopping cart after shopping at the Clinton Highway Walmart. While driving away, she realized she did not have her purse. She returned to the store, but her purse—which contained her passport, driver's license, Social Security card, work permit card, cash, credit cards, and debit cards—was gone. That night she used an online application to block purchases on most of her cards; however, she was unable to contact one provider. After receiving an email from that provider that her credit cards were being used, she successfully blocked their use and contacted law enforcement. She was able to determine that her credit card was used without her consent at two Walmart locations and other stores in Knoxville.

Knoxville Police Department ("KPD") Detective Hayden Cochran was assigned to investigate the unauthorized use of Ms. Gonzalez's credit cards. Detective Cochran discovered that her credit cards had been used at several locations in Knox County, including two Walmart stores. He contacted the asset protection investigator at both Walmart stores and determined that they had video footage of the transactions.

Fatima Elzahed, an asset protection investigator for the Clinton Highway Walmart, testified that she was contacted on October 1, 2024, by Detective Cochran and asked to pull security video footage for three September 7, 2024 transactions. In the video footage, entered as Exhibit 2, Defendant and Mya Caudillo can be seen entering the "self-checkout bullpen" ("bullpen") and purchasing a television. Exhibit 3 is a receipt from self-checkout register 5 ("register 5") verifying the purchase of an "ONN. 40 TV" for $118. The total $128.92 price, including $10.92 sales tax, was paid at 6:13:15 p.m. using a Mastercard ending in card number 49016. Ms. Elzahed testified that Defendant can then be seen leaving the bullpen.

Ms. Elzahed identified a video screenshot of the bullpen, entered as Exhibit 1, showing Ms. Caudillo's standing beside a shopping cart after purchasing the television at register 5. Also in Exhibit 1, Defendant can be seen returning to the bullpen carrying a second television to the register where Ms. Caudillo is standing. Defendant can be seen scanning a few small items and then attempting to scan a television, but Defendant scanned the wrong barcode. Noticing Defendant was having trouble, a store associate came to assist Defendant. Defendant was finally able to scan the television, but when he did, a red icon on the display screen flashed "Payment Declined." Defendant first pushed the "Okay" icon acknowledging the message and then pushed "Cancel" for the entire transaction. Ms. Caudillo then pushed the icon to cancel only the attempted purchase of the television, leaving a charge of $10.30 for the other items. Exhibit 4 is a receipt from register 5 verifying the purchase of three items totaling $10.30 and the attempted purchase of an Onn 40 television for $118.00. On the line below the $118.00 charge for the Onn 40 television

is a credit of $118.00 showing that the sale of the television was cancelled. A sale totaling $10.30 using the same Mastercard ending in card number 49016 used in the first transaction was completed at 6:17:55 PM.

Exhibit 5 is a video screenshot showing Ms. Caudillo's pushing a shopping cart loaded with two televisions out of the store. Defendant can be seen walking beside the cart and loading the two televisions into a vehicle. Ms. Caudillo enters the vehicle on the passenger's side, and Defendant gets in on the driver's side and drives away. Walmart's exterior cameras were able to record the tag number of the vehicle, which was later determined to be owned by Defendant's mother, Christina Santos.

Scott Gibson, an asset protection investigator for the Chapman Highway Walmart, testified that he was asked by KPD to pull security video footage for a September 7, 2024 transaction. He identified three DVD videos recorded on different security cameras at approximately 9:10 p.m. In the video, entered as Exhibit 5-A, Defendant can be seen attempting to scan a Hisense TV in a white box. Ms. Caudillo can be seen standing next to Defendant with an orange box containing an Onn TV. On Exhibit 5-B, Defendant and Ms. Caudillo are then seen exiting the store with only the Hisense TV. A store employee can be seen with the Onn TV.

After reviewing the video footage of Defendant and Ms. Caudillo's driving from the Clinton Highway Walmart, Detective Cochran conducted a "Flock" search on vehicles matching the description. After searching the database of the National Crime Information Center, Detective Cochran identified Ms. Santos as the registered owner of the vehicle and located her Facebook page. Using a friends list, he was able to locate Defendant's Facebook page and confirm Defendant's identity and to identify Ms. Caudillo. He arranged for Ms. Caudillo to come to the KPD station for an interview. Ms. Caudillo and Sara Jones came together. They said Defendant did not know anything about the stolen credit cards and that he only provided transportation and helped carry the televisions to the vehicle. Ms. Caudillo claimed a stack of gift cards was originally purchased by Ms. Jones for $50, that she and Ms. Jones ran into Defendant at a gas station right after they purchased the cards, and that Defendant allowed Ms. Jones to drive his car to the Clinton Highway Walmart.

Detective Cochran did not believe Ms. Caudillo and Ms. Jones. He obtained arrest warrants charging Defendant and Ms. Caudillo with shoplifting, fraudulent use of a credit card, identity theft, and a computer offense.

*Probation Violation Report*

Dalton Jett, a probation and parole officer with the Tennessee Department of Correction, supervised Defendant. Officer Jett filed a Violation of Probation Report ("the Report") on October 9, 2024, alleging that Defendant violated Rule 1 based on the new charges brought by Detective Cochran. According to the Report:

- On January 10, 2022, Defendant was sentenced to six years to be served on probation for aggravated assault. Defendant was ordered to "enter and complete the Day Reporting Center ("DRC"), reside at Integrity, and have no contact with the victim."

- On January 23, 2022, Defendant was discharged from Integrity Halfway House for failing to return for curfew, and a "zero tolerance violation" was entered due to Defendant's "absconding supervision."

- On February 1, 2022, Officer Jett filed a violation report after Defendant was arrested in Knox County on a charge out of Georgia.

- On May 20, 2022, Defendant's probation was revoked and restarted. Defendant was ordered to complete "Jellinek inpatient treatment and halfway house."

- On August 1, 2022, a zero tolerance violation was entered due to Defendant's being terminated from Jellinek and failing to report. Defendant stated multiple times he would be moving to Integrity Halfway House, but he was unable to be located during several home checks. He did eventually complete intake with Integrity and moved in.

- On August 17, 2022, a violation report was filed after Defendant was arrested.

- On August 30, 2022, Defendant's probation was revoked and reinstated to the DRC. Throughout the month of September, Defendant failed to report on multiple occasions and failed to provide documentation. Officers were then unable to reach him to verify his whereabouts.

- On September 28, 2022, a zero tolerance violation was filed because Defendant absconded from supervision.

- On November 30, 2023, Defendant was arrested in Knox County on new charges of identity theft and possession of drug paraphernalia.

- On December 12, 2023, a zero tolerance violation was entered due to the new charges.

- On June 28, 2024, Defendant admitted the violation, his probation was revoked, and he was reinstated back to the DRC and ordered to "enter and complete" Empower Halfway House.

- On August 6, 2024, Defendant received a "level-3 sanction" for falling asleep in his DRC classes after several warnings to stay awake and was sanctioned by having his reporting increased for 90 days.

- On September 25, 2024, a picture of Defendant was posted on the Facebook page East TN Crime Stoppers, where he was allegedly using a stolen credit card to make a purchase. Officer Jett called KPD and identified Defendant.

Officer Jett explained that a "Level 3 sanction" is under a Level 4 "zero tolerance sanction." Officer Jett recommended that Defendant's probation be revoked. On cross-examination, Officer Jett agreed that Defendant had not had any positive drug screens during the time he was on probation.

### *Defense Proof*

Defendant testified that he worked at the International House of Pancakes ("IHOP") on Merchants Drive. He claimed that Ms. Caudillo and Ms. Jones were "associates" of his and that they approached him while he was in his mother's car at a gas station across the street from IHOP. He agreed to give them "a ride to the Walmart to go shopping [because] they had some gift cards." He said that he agreed to drive them to Walmart because he "was just helping the young ladies out." He explained that, when they arrived at the Clinton Highway Walmart, Ms. Jones stayed in the car, and he and Ms. Caudillo went inside, where he assisted Ms. Caudillo with her purchases. After checking out, Defendant "grabbed the receipts" and helped Ms. Caudillo carry the televisions to the car. They left, stopping at McDonald's before going "to the next Walmart."

Defendant explained that the reason they left the Clinton Highway Walmart and went to the Chapman Highway Walmart was because Ms. Caudillo lived on Maryville Pike and that, while taking Ms. Caudillo home, she asked to go to the Chapman Highway Walmart. When they arrived at the Chapman Highway Walmart, Defendant and Ms.

Caudillo went inside, and he helped her purchase another television and helped carry it to the car. He claimed he "had no reason to ask or think anything of it." He said that he "was just helping the young ladies out, doing them a favor, and [that he] had no knowledge of any stolen credit cards or anything being taken from somebody else."

Defendant stated that, after the purchase of the second television was declined at the Clinton Highway Walmart, he pressed the touch screen to cancel the purchase. He claimed Ms. Caudillo "continued manipulating the terminal" and a receipt "came out," so he loaded both televisions into the cart, and they left.

On cross-examination, Defendant admitted that he was a "romantic associate" of Ms. Jones. He said that Ms. Jones stayed in the car and did not go into Walmart. He admitted that the video from Clinton Highway Walmart showed him getting into the driver's seat before leaving. Defendant claimed that he was the only person to drive his mother's car that day. He denied telling Ms. Jones to make a statement to the police and said that he did not know why both Ms. Caudillo and Ms. Jones told KPD officers that Ms. Jones was driving. He claimed that he was not aware that Ms. Caudillo was using a stolen card. He admitted that he knew the sale of the second television was declined and that he "tried to cancel the entire order." He claimed that he did not know that Ms. Caudillo then cancelled only the television purchase and did not notice that the screen showed a total merchandise sale of $10.30.

Defendant was asked, "why not purchase four TVs in one place versus two TVs at two different Walmart[]s on opposite ends of town?" Defendant responded, "[W]hen I was on Clinton Highway and on the way back to . . . her place on Maryville Pike, she asked to go to the Chapman Highway [Walmart]. I didn't think nothing of it. I figured she still had more on her gift cards and she was shopping, so."

### *Trial Court's Findings and Decision to Revoke*

The trial court orally made its findings on the record. The court found that Ms. Gonzalez's purse was stolen at the Clinton Highway Walmart and that her credit cards were fraudulently used to purchase items at two Knoxville Walmart locations. The court found that Ms. Gonzalez did not know Defendant, and there was no direct evidence that Defendant stole her purse. The court found that Ms. Elzahed provided video evidence of fraudulent transactions using Ms. Gonzalez's cards on September 7, 2024, at the Clinton Highway Walmart and that Mr. Gibson provided video evidence from the Chapman Highway Walmart showing Defendant's fraudulently purchasing a television on September 7, 2024. The court found that Detective Cochran positively identified Defendant in the video footage using the stolen credit cards. The court found that "in looking at those

videos, it's clear that [Defendant] is acting with knowledge of what's going on in these particular purchases. It's very clear that they're not gift cards. They're credit cards and I think it's reasonable to assume that he was aware of that." The court recognized that the State might not have "a strong case with regard to some of those charges, but at a minimum [Defendant] engaged in a shoplifting just as clear as day, especially after testifying that . . . canceled that transaction and then went and left with the TV nonetheless[.]"

Based on the testimony of Officer Jett, the trial court found that Defendant "had generally complied with probation" and "voluntarily informed officers he was under investigation." The court found that Defendant's probation had previously been revoked after he admitted to violations on February 23, 2022, August 30, 2022, and January 10, 2024. The January 10, 2024 violation was for absconding and a new charge of identity theft. This was the fourth violation for Defendant. By order entered on October 21, 2024, the trial court revoked Defendant's probation and ordered him to serve the remainder of his sentence in custody.

Defendant attempted to file a pro se notice of appeal in the trial court on October 27, 2024. Defendant filed an untimely pro se notice of appeal in this court on November 27, 2024.

## Analysis

Defendant claims that the trial court erred in revoking his probation and ordering him to serve the balance of the sentence in confinement. Although Defendant concedes that his appeal was not timely filed, he asks that we waive timely filing of his notice of appeal because he was in custody and mistakenly filed a pro se notice of appeal in the trial court on October 27, 2024, before correctly filing a pro se notice in this court on November 27, 2024. The State responds that the interest of justice do not warrant a waiver of the timeliness requirement and that his appeal should be dismissed as untimely. Alternatively, the State argues that the trial court properly revoked Defendant's probation and placed his sentence into effect. We waive timely filing of the notice of appeal in the interest- of justice. We agree with the State that the trial court properly revoked Defendant's probation and placed his sentence into effect.

### *Two-step Consideration under* *Dagnan*

Probation revocation decisions involve "a two-step consideration on the part of the trial court." *State v. Dagnan*, 641 S.W.3d 751, 757 (Tenn. 2022). The first step is for the court to determine by a preponderance of the evidence whether a defendant has violated one or more of the conditions of probation. *Id*. at 756. If the court finds that a violation has occurred and revokes a defendant's probation, the second step is for the court to

determine the proper consequence of revocation. *Id*. at 757. Although these are "two distinct discretionary decisions," separate hearings are not required. *Id*.

## Standard of Review

If a trial court places sufficient findings and the reasons for both its decision to revoke probation and its decision as to the appropriate consequences of the revocation on the record, this court's standard of review is abuse of discretion with a presumption of reasonableness. *Id.* at 753. We will not disturb the trial court's ruling on appeal absent an abuse of discretion. *State v. Shaffer*, 45 S.W.3d 553, 554-55 (Tenn. 2001) (citing *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991)). To establish an abuse of discretion, a defendant must show that there is "no substantial evidence" in the record to support the trial court's determination that a violation of probation has occurred. *Id*. at 554.

## Trial Court's Decision to Revoke Probation

We find that the court placed sufficient findings and the reasons for its decision to revoke Defendant's probation on the record, and therefore, we review the trial court's decision to revoke Defendant's probation under an abuse of discretion standard with a presumption of reasonableness. *Dagnan*, 641 S.W.3d at 759.

In this case, the trial court found that, "in looking at those videos, it's clear that [Defendant was] acting with knowledge of what's going on in these particular purchases. It's very clear that they're not gift cards. They're credit cards and I think it's reasonable to assume that he was aware of that." The court recognized that the State might not have "a strong case with regard to some of those charges, but at a minimum [Defendant] engaged in a shoplifting just as clear as day, especially after testifying that [] he canceled that transaction and then went and left with the TV nonetheless[.]" The court essentially discredited Defendant's testimony that he "was just helping" Ms. Caudillo and Ms. Jones by driving them to Walmart, that he was not aware that Ms. Caudillo was using a stolen card to purchase the first television, and that he did not know that Ms. Caudillo did not complete the purchase of the second television. "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *State v. Stack*, 682 S.W.3d 866, 872 (Tenn. Crim. App. 2023) (quoting *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citation omitted)). We conclude that the preponderance of evidence presented at the revocation hearing supported the trial court's finding that Defendant violated Rule 1 of his probation by committing new criminal offenses. *See* Tenn. Code Ann. § 40-35-311(e)(2). We determine that the trial court did not abuse its discretion in revoking Defendant's probation.

*Consequences upon Revocation of Probation*

Once a trial court determines that a defendant's probation should be revoked, the court must then "determine the appropriate consequence upon revocation." *Dagnan*, 641 S.W.3d at 757. The consequence may include: (1) confinement; (2) execution of the sentence as originally entered; (3) return of a defendant to probation on modified conditions; or (4) extension of a defendant's probationary period by up to two years. *State v. Brawner*, No. W2013-01144-CCA-R3-CD, 2014 WL 465743, at *2 (Tenn. Crim. App. Feb. 4, 2014) (citing Tenn. Code Ann. §§ 40-35-308(a), -308(c), -310, -311(e); *State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999)), *no perm. app. filed*. "Relevant considerations might be, but are certainly not limited to, . . . the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character." *Dagnan*, 641 S.W.3d at 759 n.5.

We conclude that the trial court placed sufficient findings and the reasons for its decision on the record; therefore, we review the court's decision to commence the execution of the judgment as originally entered under an abuse of discretion standard with a presumption of reasonableness. *See* Tenn. Code Ann. § 40-35-311(e)(2) (2023). The trial court found that Defendant's probation had been revoked on three previous occasions, including a revocation on January 10, 2024, for absconding and a new charge of identity theft—the same type of criminal behavior for which Defendant was charged in September 2024. Defendant has not shown that the court abused its discretion by ordering Defendant to serve the balance of his sentence, and he is not entitled to relief.

## Conclusion

Based upon the foregoing, we affirm the judgment of the trial court.

s/*Robert L. Holloway, Jr.*

ROBERT L. HOLLOWAY, JR., JUDGE

- 9 -